Present: All the Justices

ROBERT NELSON, JR.

OPINION BY
v.  Record No. 002301    CHIEF JUSTICE HARRY L. CARRICO
September 14, 2001

WARDEN OF THE KEEN MOUNTAIN
CORRECTIONAL CENTER

UPON A PETITION FOR A WRIT OF HABEAS CORPUS

This case involves a "Baker claim," i.e., one arising from this Court's decision in Commonwealth v. Baker, 258 Va. 1, 516 S.E.2d 219 (1999) (per curiam), aff'g Baker v. Commonwealth, 28 Va. App. 306, 504 S.E.2d 394 (1998) (failure to notify juvenile's parents of proceedings in juvenile court renders void subsequent criminal convictions in circuit court).[1]  The present claim is asserted in an original petition for a writ of habeas corpus filed in this Court by Robert Nelson, Jr. (Nelson), against the Warden of the Keen Mountain Correctional Center (the Warden).

According to the allegations of the petition, Nelson was arrested in January 1985 at the age of seventeen for two counts of armed robbery, two counts of abduction, one count of receiving stolen property, and one count of sexual assault.  He was "arraigned" in the Juvenile and Domestic

Relations District Court of Fairfax County and then brought before that court in March 1985 for a transfer hearing. The juvenile court transferred him to the Circuit Court of Fairfax County for trial as an adult. He pled guilty to the offenses in circuit court and was sentenced to serve forty-eight years in the penitentiary.

Nelson alleges in his habeas petition that his father was not notified of the initiation of the proceedings in juvenile court or of the transfer hearing.[2] Nelson alleges that the juvenile court's failure to notify his father of the proceedings rendered his convictions in the circuit court unlawful and void.[3]

---

[1] For convenience, we will refer to the Court of Appeals' decision as Baker I and our decision as Baker II or, collectively, as Baker.

[2] Nelson makes no complaint about notice to his mother.

[3] At the time of the juvenile proceedings in this case, Code § 16.1-263(A) provided that "[a]fter a petition has been filed, the court shall direct the issuance of summonses, one directed to the child, . . . and another to the parents . . . ." At its 1999 session, the General Assembly substituted "at least one parent" for "the parents" in § 16.1-263(A). 1999 Va. Acts ch. 952.

Code § 16.1-263(E) provides that "[n]o such summons or notification shall be required if the judge shall certify on the record that . . . the identity of [the father] is not reasonably ascertainable." The judge made no such certification in this case.

Code § 16.1-264(A) provides that if a person other than the juvenile defendant cannot be found or his post office

2

Nelson not only invokes our decision in Baker II but also our decision in David Moore v. Commonwealth, 259 Va. 431, 527 S.E.2d 406 (2000). In Baker II, we affirmed the judgment of the Court of Appeals "[f]or the reasons set forth in the opinion of" that court. 258 Va. at 2, 516 S.E.2d at 220. In its judgment, the Court of Appeals reversed the criminal convictions of a seventeen-year-old defendant, stating that "[b]ecause the notice of the initiation of juvenile proceedings was not properly served on the required parties, the transfer of jurisdiction [to the circuit court] was ineffectual and the subsequent convictions are void." 28 Va. App. at 315, 504 S.E.2d at 399.

In David Moore, we applied Baker II and held that, because of the failure to notify the defendant's father of the initiation of juvenile court proceedings, "the juvenile court . . . never acquired the authority to exercise its jurisdiction to conduct the transfer hearing that resulted in the transfer of Moore's case to the circuit court. Accordingly, the circuit court never acquired the authority to exercise its jurisdiction to try Moore for the criminal

address cannot be located, the court may order service of the summons upon him by publication.

3

offenses charged in the indictments, and Moore's convictions in the circuit court are void." David Moore, 259 Va. at 440, 527 S.E.2d at 411.

Nelson argues that his case "falls squarely within the rule enunciated by this Court" in Baker II and David Moore, that his convictions, therefore, are void, and that habeas corpus is a proper method of redress. Nelson argues further that, because his convictions are void, they are subject to attack "at **any** time, in any way, by anybody, whether the attack be direct or collateral," and, accordingly, his petition for a writ of habeas corpus is not barred by the statute of limitations contained in Code § 8.01-654(A)(2).[4]

For his part, the Warden contends that Nelson's petition for a writ of habeas corpus is barred by the

_____

[4] Code § 8.01-654(A)(2) provides that a habeas corpus petition attacking a criminal conviction or sentence, except for cases in which a death sentence has been imposed, "shall be filed within two years from the date of final judgment in the trial court or within one year from either final disposition of the direct appeal in state court or the time for filing such appeal has expired, whichever is later." This statute became effective July 1, 1998. We allowed petitioners whose time for filing would have expired prior to the effective date of the statute an extra year, or until June 30, 1999, for the filing of petitions for habeas corpus. Final judgment on Nelson's convictions was entered in June 1985. He did not file his petition until September 21, 2000, beyond the statutory period and the extra year. Of course, he takes the position his case is not subject to the statute.

statute of limitations contained in Code § 8.01-654(A)(2).
However, the Warden makes the overriding argument that this
Court should "take the opportunity to clarify the area of
the law concerned in this [case], hold that lack of notice
to a parent in juvenile court proceedings renders a
judgment voidable and not void and overrule the prior
decisions in David Moore and Baker to the extent they hold
otherwise."  We will consider this argument first.

The Warden's argument implicates, of course, the
principles of stare decisis.  In Selected Risks Ins. Co. v.
Dean, 233 Va. 260, 355 S.E.2d 579 (1987), we stated as
follows:

> In Virginia, the doctrine of stare decisis is
> more than a mere cliche.  That doctrine plays a
> significant role in the orderly administration of
> justice by assuring consistent, predictable, and
> balanced application of legal principles.  And when a
> court of last resort has established a precedent,
> after full deliberation upon the issue by the court,
> the precedent will not be treated lightly or ignored,
> in the absence of flagrant error or mistake.

Id. at 265, 355 S.E.2d at 581.  "Our strong adherence to
the doctrine of stare decisis does not, however, compel us
to perpetuate what we believe to be an incorrect
application of the law."  Nunnally v. Artis, 254 Va. 247,
253, 492 S.E.2d 126, 129 (1997).

In David Moore, this Court undertook to explain its
decision in Baker II.  David Moore, 259 Va. at 434, 527

5

S.E.2d at 407 ("[t]he primary focus of this appeal is a determination of the scope of our recent decision in [Baker II])." While neither the Court of Appeals' opinion in Baker I nor ours in Baker II mentioned the phrase "subject matter jurisdiction," we made a point in David Moore of "emphasizing the necessary distinction to be drawn . . . between the power of a court to adjudicate a specified class of cases, commonly known as 'subject matter jurisdiction,' and the authority of a court to exercise that power in a particular case." Id. at 437, 527 S.E.2d at 409.

We said that "[s]ubject matter jurisdiction is granted by constitution or statute," that "[i]t cannot be waived," that "any judgment rendered without it is void ab initio," and that "lack of subject matter jurisdiction 'may be raised at any time, in any manner, before any court, or by the court itself.' " Id. (quoting Humphreys v. Commonwealth, 186 Va. 765, 772, 43 S.E.2d 890, 893 (1947)). We made plain, however, that the lack of subject matter jurisdiction was not at issue in David Moore. Rather, we said that the issue was "the unique statutory framework whereby a juvenile court and in turn a circuit court acquire the authority to exercise their subject matter

6

jurisdiction."  259 Va. at 438, 527 S.E.2d at 409.

(Emphasis added.)

After noting the Court's emphasis on the distinction between subject matter jurisdiction and the authority to exercise that jurisdiction, the Court's next step should have been to demonstrate the difference resulting from the distinction.  Yet, we made a distinction without a difference for, with our very next step, we elevated the failure of a court to comply with the requirements for exercising its authority to the same level of gravity as a lack of subject matter jurisdiction.

We stated that " '[a] court's authority to exercise its subject matter jurisdiction over a case may be restricted by a failure to comply with statutory requirements that are mandatory in nature and, thus, are prerequisite to a court's lawful exercise of that jurisdiction.' "  Id. at 437, 527 S.E.2d at 409 (quoting Dennis Moore v. Commonwealth, 259 Va. 405, 409, 527 S.E.2d 415, 417 (2000)).[5]  In other words, we made the statutory

---

[5] Dennis Moore and David Moore are two different defendants.  Dennis Moore involved Code § 16.1-269.6(E), which provides that "[a]ny objection to the jurisdiction of the circuit court pursuant to [Article 7 of Chapter 11 of Title 16.1] shall be waived if not made before arraignment."  This Court said in David Moore that the section was inapplicable because it relates to a defect in a transfer hearing while David Moore claimed a defect in

7

requirements both mandatory <u>and</u> jurisdictional. We also

made clear that the requirements were not subject to waiver

by the juvenile's failure to object to a defect in the

proceedings. <u>David Moore</u>, 259 Va. at 439, 527 S.E.2d at

410.

We are of opinion <u>David Moore</u> is flawed by our failure

to recognize that, in the legal and factual framework in

which the decision was made, a different outcome should

have resulted from the distinction we drew between subject

matter jurisdiction and the authority to exercise that

jurisdiction. Analysis of the framework begins with our

decision in <u>Peyton v. French</u>, 207 Va. 73, 147 S.E.2d 739

(1966), cited in both <u>Baker I</u> and <u>David Moore</u>.

In <u>Peyton v. French</u>, the juvenile court "certified" a

sixteen-year-old juvenile to the circuit court for trial on

larceny and breaking and entering charges. Neither of the

juvenile's parents was present, they had not received any

notice to appear, and a guardian <u>ad</u> <u>litem</u> was not appointed

---

the initiation of the juvenile proceedings. <u>David Moore</u>,
259 Va. at 440, 527 S.E.2d at 411. Another statute, Code
§ 16.1-269.1(E), addresses defects in the initiation of
juvenile proceedings. It provides that "[a]n indictment in
the circuit court cures any error or defect in any
proceeding held in the juvenile court except with respect
to the juvenile's age." However, both § 16.1-269.1(E) and
§ 16.1-269.6(E) apply only to offenses committed after July
1, 1996. As noted <u>supra</u> in the text, Nelson's offenses
were committed in 1985.

8

to represent the juvenile.  He was convicted in circuit court and sentenced to the penitentiary.  We said "the failure of the juvenile court to comply with the applicable statutes rendered the circuit court proceedings void."  Id. at 80, 147 S.E.2d at 743.  Similar results were reached under like circumstances in Gregory v. Peyton, 208 Va. 157, 156 S.E.2d 624 (1967), Gogley v. Peyton, 208 Va. 679, 160 S.E.2d 746 (1968), Pruitt v. Peyton, 209 Va. 532, 165 S.E.2d 288 (1969), and Jones v. Commonwealth, 213 Va. 425, 192 S.E.2d 775 (1972), all referring back to Peyton v. French.

As Justice Kinser's dissent in David Moore aptly points out, while we did not specify in Peyton v. French and its progeny that we were considering subject matter jurisdictional defects, the question of the juvenile court's subject matter jurisdiction was implicated because we allowed the defendants in those cases to mount collateral attacks upon their convictions.  David Moore, 259 Va. at 444, 527 S.E.2d at 413.  And as the dissent further notes, there were two statutory provisions in effect at the time the Peyton v. French line of cases was decided that rendered the defects jurisdictional rather than procedural.  Id. at 445, 527 S.E.2d at 413-14.

9

Former Code § 16.1-172 provided that "[i]n no case shall the hearing proceed until the parent or parents of the child . . . have been notified." (Emphasis added.) And former Code § 16.1-173 provided that when no person required to be notified by former Code § 16.1-172 was present for the hearing, the "court shall, before proceeding with the hearing, appoint a . . . guardian ad litem to represent the interests of the child." (Emphasis added.)

However, beginning in 1968, the General Assembly made a series of dramatic changes in the jurisdictional aspect of the notice requirements of the juvenile statutes. That year, the General Assembly deleted from former Code § 16.1-173 the requirement that the "court shall, before proceeding with the hearing," appoint a guardian ad litem when no person required to be notified was present at the hearing. And, in 1977, the General Assembly removed from former Code § 16.1-172 the provision that "[i]n no case shall the hearing proceed" until the juvenile's parent or parents have been notified. Significantly, the General Assembly has not replaced the language deleted from former Code §§ 16.1-172 and -173 with anything remotely suggesting an intention to re-institute a jurisdictional requirement in the notice provisions of the juvenile statutes.

10

In 1973, the General Assembly enacted Code § 16.1-176.2 (now Code § 16.1-270).  This new section provided that at any time prior to a transfer hearing, "a child . . ., with the written consent of his counsel, <u>may</u> elect in writing to <u>waive the jurisdiction of the juvenile court</u> and have his case transferred to the appropriate court of record."  (Emphasis added.)

Furthermore, subsequent decisions of this Court substantially impacted the jurisdictional aspect of the notice requirements of the juvenile statutes.  In 1976, prompted in large part by the enactment of Code § 16.1-176.2 permitting a juvenile to waive the jurisdiction of the juvenile court, this Court decided that a statutory provision stating that the juvenile court <u>shall</u> give parents <u>notice in writing</u> of a transfer hearing was procedural and not jurisdictional in nature.  <u>Turner v. Commonwealth</u>, 216 Va. 666, 222 S.E.2d 517 (1976).  We said, "especially is the jurisdictional argument negated by the . . . provision that the transfer hearing itself may be waived."  <u>Id.</u> at 669, 222 S.E.2d at 520.  As a result, we held that "any departure from [the] requirement [of written notice] may be cured or waived by the appearance of proper

11

and necessary parties and a failure to object to inadequacy of notice." Id. at 668, 222 S.E.2d at 519.[6]

In Jamborsky v. Baskins, 247 Va. 506, 442 S.E.2d 636 (1994), the circuit court failed to comply with the then current juvenile transfer statute, which provided that the circuit court shall, within twenty-one days after receipt of the case from juvenile court, conduct an examination to determine if there had been compliance with the statute. Code § 16.1-269(E) (repealed by 1994 Va. Acts ch. 859 and 949) (see present Code § 16.1-269.6(B)). The Court of Appeals issued a writ of prohibition against further proceedings in the circuit court, holding that the twenty-one day requirement was mandatory and jurisdictional. We reversed, holding that the twenty-one day provision was "directory and procedural, rather than mandatory and jurisdictional." Id. at 511, 442 S.E.2d at 639.

Under the doctrine of stare decisis, we are not obliged to uphold a decision that is itself at odds with precedent previously established by this Court "after full

---

[6] The view expressed in David Moore that the notice requirements of the juvenile statutes are jurisdictional in nature and cannot be waived is contradicted by Morrison v. Bestler, 239 Va. 166, 387 S.E.2d at 753 (1990). After noting that "there is a significant difference between subject matter jurisdiction and the other 'jurisdictional' elements," including notice jurisdiction, we stated that

12

deliberation upon the issue," Selected Risks, 233 Va. at 265, 355 S.E.2d at 581, that fails to give proper effect to "the interposition of legislative power," Postal Telegraph-Cable Co. v. Farmville & Powhatan R.R. Co., 96 Va. 661, 662, 32 S.E. 468, 469 (1899), and that "has produced 'confusion,' " United States v. Dixon, 509 U.S. 688, 711 (1993).  David Moore suffers from all of these ills.

David Moore is at odds with Turner, Jamborsky, and Morrison, precedents previously established by this Court after full deliberation upon the issues and never overruled.  It fails to give proper effect to the interposition of legislative power, exemplified by the substantial statutory changes evincing legislative intent to make the notice provisions of the juvenile statutes procedural and not jurisdictional.  And it certainly has produced confusion among the bench and bar of this Commonwealth.

We indicated supra that we thought a different outcome should have resulted in David Moore from the distinction we drew between subject matter jurisdiction and the authority to exercise that jurisdiction.  In our opinion, the different outcome should have consisted of a finding that

"[s]ubject matter jurisdiction alone cannot be waived."
Id. at 169, 387 S.E.2d 755.

13

the statutory requirement of notice to parents was not jurisdictional but procedural in nature, that a failure to notify parents could be waived by a failure to object, and, correspondingly, that a failure to comply with the requirement rendered subsequent convictions voidable and not void. To the extent David Moore conflicts with these views, it is overruled.

Baker, however, should not suffer the same fate. The voiding of Baker's convictions was predictable. In this context, a matter is void either because it has been null from the beginning (void ab initio) or because it is declared null although seemingly valid until that point in time (voidable). See Black's Law Dictionary 1568 (7th ed. 1999). Neither the Court of Appeals nor this Court classified Baker's convictions as void ab initio, and they were not void ab initio because David Moore makes clear that both the juvenile court and the circuit court in Baker possessed subject matter jurisdiction. David Moore, 259 Va. at 437-38, 527 S.E.2d at 409. But when the Court of Appeals determined that Baker's father was not given the notice required by the version of Code § 16.1-263(A) then in effect and, significantly, it was clear Baker had preserved the error both by filing in circuit court a motion to dismiss before he was indicted and by timely

14

raising the issue on appeal, the Court of Appeals was bound to declare void what theretofore had been merely voidable.

In contrast, Nelson did not preserve the error in the juvenile court's failure to give his father notice and did not raise the issue until he filed his petition for a writ of habeas corpus in this Court. Because Nelson's convictions were merely voidable, his failure to raise the issue in a timely manner constitutes a waiver of the error and results in the dismissal of his petition. In light of this disposition, we do not reach any of the other issues in the case.

Petition dismissed.

JUSTICE KOONTZ, with whom JUSTICE HASSELL and JUSTICE KEENAN join, dissenting.

I respectfully dissent. Today, although expressly acknowledging " '[o]ur strong adherence to the doctrine of stare decisis,' " a new majority of this Court overrules our prior decision in David Moore v. Commonwealth, 259 Va. 431, 527 S.E.2d 406 (2000), after concluding that decision is "flawed by our failure to recognize that, in the legal and factual framework in which the decision was made, a different outcome should have resulted from the distinction we drew between subject matter jurisdiction and the authority to exercise that jurisdiction." The new majority

15

reasons that "the different outcome should have consisted of a finding that the statutory requirement of notice to parents was not jurisdictional but procedural in nature, that a failure to notify parents could be waived by a failure to object, and, correspondingly, that a failure to comply with the requirement rendered subsequent convictions voidable and not void." (Emphasis added). Of course, because David Moore is otherwise dispositive of the issue whether the convictions of Robert Nelson, Jr. in June 1985 were merely voidable and not void, it is necessary for the majority now to cast the decision in David Moore aside in order to reach a different outcome in Nelson's case and to dismiss his petition.

In my view, David Moore was correctly decided and is entirely consistent with established precedent of this Court. Beyond question it was decided after full deliberation upon the issue presented. However, I do not dissent here merely to defend our decision in David Moore. I do so also because the new majority in this case necessarily labors to obtain a desired "outcome," and in that process brings into question whether this Court consistently heeds its pronouncement that "the doctrine of stare decisis is more than a mere cliché." Selected Risks Ins. Co. v. Dean, 233 Va. 260, 265, 355 S.E.2d 579, 581

16

(1987). I cannot join in an opinion that fosters the perception that this Court does not.

With regard to our decision in David Moore, and the precedent upon which it relies, the failure of the juvenile court to give parental notification of the initiation of proceedings against a juvenile alleged to have committed a criminal offense, as required by the then applicable provisions of Code §§ 16.1-263 and 16.1-264, is particularly significant. That notification is critical to the proper application of the unique statutory scheme in which such a juvenile is initially brought within the purview of the juvenile court system and then "transferred" to the appropriate circuit court to be tried as an adult. Under this unique statutory scheme the juvenile court is given "exclusive original jurisdiction" over all cases involving a juvenile who is alleged to have committed a criminal offense. Code § 16.1-241. Thus, the circuit court has no jurisdiction over such cases in the absence of the juvenile court's compliance with a mandatory procedure to invoke its initial exclusive jurisdiction and thereby subsequently to transfer a juvenile to be tried as an adult in the circuit court. It is that process, whether labeled jurisdictional or mandatory, that is the focus of the present case, just as it was in Peyton v. French, 207 Va.

17

73, 147 S.E.2d 739 (1966), subsequently in Commonwealth v. Baker, 258 Va. 1, 516 S.E.2d 219 (1999)(per curiam), aff'g Baker v. Commonwealth, 28 Va. App. 306, 504 S.E.2d 394 (1998) (hereafter Baker II and Baker I, respectively), and thereafter in David Moore.

In this context, it has long been understood and accepted that a juvenile, even one alleged to have committed a serious crime, is to be treated differently from an adult when the juvenile's conduct brings him within the purview of the juvenile court system.  One difference is that a child is entitled to the guidance of his parents or guardian at a juvenile court proceeding.  Undoubtedly, the most significant proceeding in a juvenile court is when a juvenile is transferred to a circuit court to be tried as an adult.  See Kent v. United States, 383 U.S. 541, 553 (1966).  Thus, in French, where, among other things, the juvenile court failed to give the required parental notice of the initiation of the proceedings in that court, we noted that the juvenile court had exclusive original jurisdiction over the offense alleged to have been committed by the juvenile.  We also observed that "the clear purpose and intent of the Juvenile and Domestic Relations Court Law cannot be achieved if it is not mandatory that the proceedings set forth in [the several

18

statutes requiring the filing of a petition and parental notification prior to certifying a juvenile's case to the circuit court] be complied with.  Indeed, the very language of the statutes makes it <u>mandatory that the aforesaid . . . statutes be followed before criminal jurisdiction in a proper court of record comes into being</u>."  207 Va. at 79, 147 S.E.2d at 743 (emphasis added).  Accordingly, we expressly and purposefully held that "the failure of the juvenile court to comply with the applicable statutes rendered the circuit court proceeding <u>void</u>."  <u>Id.</u> at 80, 147 S.E.2d at 743 (emphasis added).

Relying, in part, upon our decision in <u>French</u>, the Court of Appeals in <u>Baker I</u> held that "[b]ecause the notice of the initiation of juvenile court proceedings was not properly served [on the juvenile's biological father as required by the then applicable version of Code § 16.1-263], the transfer of jurisdiction was ineffectual and the subsequent convictions [of the juvenile in the circuit court] are <u>void</u>."  28 Va. App. at 315, 504 S.E.2d at 399 (emphasis added).  In reaching this judgment, the Court of Appeals drew upon its prior decision in <u>Karim v. Commonwealth</u>, 22 Va. App. 767, 779, 473 S.E.2d 103, 108-09 (1996) (en banc), wherein it stated that "the provisions of Code §§ 16.1-263 and 16.1-264, 'relating to procedures for

19

instituting proceedings against juveniles, are mandatory and jurisdictional' and the failure to 'strictly follow' these notice procedures denies a juvenile defendant 'a substantive right and the constitutional guarantee of due process.' " Baker I, 28 Va. App. at 310, 504 S.E.2d at 396 (emphasis added). In Baker II, we affirmed this judgment of the Court of Appeals "[f]or the reasons set forth in the opinion" in Baker I. Indeed, these decisions reflect our consistent observation that "jurisdiction of the person and the proceeding is the very basis of a full and fair hearing at a criminal trial." Gogley v. Peyton, 208 Va. 679, 682, 160 S.E.2d 746, 748 (1968).

Contrary to the position now taken by the majority in the present case, there is no suggestion in French, Baker I, or Baker II that our use of the term "void" was intended to mean "voidable." Remarkably, the majority finds its only support in Black's Law Dictionary 1568 (7th ed. 1999) to reason that by not characterizing a void judgment as "void ab initio" such a judgment is merely voidable "because it is declared null although seemingly valid until that point in time." I am unaware that the appellate courts of this Commonwealth are so imprecise when concluding that a particular judgment is either "void" or "voidable." See, e.g., Roach v. Director, Dep't of

20

Corrections, 258 Va. 537, 547, 522 S.E.2d 869, 873 (1999);

Pigg v. Commonwealth, 17 Va. App. 756, 760, 441 S.E.2d 216,

219 (1994)(en banc).

Moreover, the view now taken by the majority with regard to Baker I and Baker II, that because the juvenile there preserved the error of the failure of the juvenile court to give the required parental notice "the Court of Appeals was bound to declare void what theretofore had been merely voidable," is at best circular reasoning.  In reality, the majority equates the preservation of the error with an analysis of the character of the error.  However, if the error causes a judgment to be void, that is, a nullity, the failure to preserve that error in the trial court or upon appeal does not and cannot cause the judgment to be merely voidable.  Rather, the void judgment may be challenged "at any time, in any manner, before any court, or by the court itself."  Humphreys v. Commonwealth, 186 Va. 765, 772, 43 S.E.2d 890, 893 (1947).  And so it was in Baker II that after careful consideration we specifically declined the Attorney General's request that we apply our judgment in that case prospectively only and held that retrospective application was mandated.  258 Va. at 2, 516 S.E.2d at 219.

21

With this background, we next decided David Moore. The issue presented was whether the failure to give the statutory notice of the initiation of juvenile court proceedings to a juvenile's parent was a defect in the proceedings such that it was not subject to waiver by the juvenile either in the juvenile court or the circuit court. Because David Moore had raised no such objection either in the juvenile court or the circuit court where he was convicted of various criminal offenses as an adult, we took the opportunity to determine the scope of our decision in Baker II where, as previously noted, the juvenile preserved the objection. The majority in the present case, as if newly discovered, finds a flaw in our analysis because in David Moore "we made the statutory requirements [of parental notification] both mandatory and jurisdictional." But, we did so expressly because in Baker II we adopted the reasoning of the Court of Appeals in Baker I that such requirements are "mandatory and jurisdictional." Despite its assertion to the contrary, the majority does have "the same quarrel with Baker [II] as with David Moore;" the majority simply wants to now declare "voidable" what has consistently been declared "void."[*]

_____

[*] The majority also concludes that "David Moore is at odds" with our prior decisions in Turner v. Commonwealth,

22

In David Moore we explained why Code § 16.1-269.1(E)
(indictment in circuit court cures any error or defect in
any proceeding held in juvenile court except with respect
to juvenile's age) was not applicable to Moore's case.
This provision applies only to offenses committed on or
after July 1, 1996.  Nelson's offenses were committed in
1985 and, therefore, this provision does not apply to his
case.  In David Moore, we also addressed Code § 16.1-
269.6(E) (any objection to the jurisdiction of the circuit
court waived if not made before arraignment).  This statute

---

216 Va. 666, 222 S.E.2d 517 (1976), Jamborsky v. Baskins,
247 Va. 506, 442 S.E.2d 626 (1994), and Morrison v.
Bestler, 239 Va. 166, 387 S.E.2d 753 (1990).  None of these
cases, however, involved a "Baker claim."  Turner involved
a failure to give written notice of a transfer hearing.
Jamborsky involved a failure of the circuit court to
conduct an examination within twenty-one days after receipt
of the case to determine whether a transfer was proper.  We
held that these statutory requirements were procedural and
not mandatory and jurisdictional.  Morrison was a medical
malpractice case and, obviously, does not purport to
address the jurisdictional aspect of the statutory mandate
of parental notification of the initiation of juvenile
court proceedings specifically addressed in French,
Baker I, Baker II, and David Moore.

    Moreover, the enactment of Code § 16.1-176.2 (now Code
§ 16.1-270) permitting a juvenile to waive a transfer
hearing does not lessen the jurisdictional aspect of the
requirement of parental notification of the initiation of
juvenile court proceedings against a juvenile alleged to
have committed a criminal offense.  This statute
necessarily assumes that there is an otherwise proper
proceeding to be waived in the first place; it is not a
curative statute such as Code §§ 16.1-269.1(E) and 16.1-
269.6(E).

23

also does not apply to offenses committed prior to July 1, 1996 and, therefore, does not apply to Nelson's case.

The significance of these statutory enactments then becomes readily apparent in the context of what the majority appropriately labels a "Baker claim." In short, with regard to offenses committed by a juvenile prior to July 1, 1996, the failure of the juvenile court to give the statutorily mandated parental notification of the initiation of proceedings in that court is a defect in the proceedings such that the circuit court has no jurisdiction over the juvenile's case and the circuit court's judgment of conviction is void and not merely voidable. As such, the judgment is subject to successful attack by a subsequent petition for a writ of habeas corpus. Nelson's claims fall well within this analysis and the applicable timeframe.

Finally, the majority's acknowledgment of our adherence to the doctrine of stare decisis in the present case rings hollow in light of our prior considerations of the issue addressed. After this Court issued its per curiam opinion in Baker II, the Commonwealth filed a petition to reconsider. The Commonwealth stated in its petition to reconsider:

24

Within a matter of days, if not hours, of this Court's decision [in Baker], Virginia prisoners seized upon the Court's citation of Gogley [v. Peyton, 208 Va. 679, 160 S.E.2d 746 (1968)] in support of the proposition that a so-called "Baker" error raises a matter of "subject matter" jurisdiction that may be raised at any time, regardless of whether the alleged lack of notice to a biological parent had been raised at trial and on direct appeal . . . .

It is a matter of utmost importance to the Commonwealth, therefore, that the Court grant rehearing in order to thoroughly and carefully consider, and expressly decide, whether a so-called "Baker" error raises an issue of "subject matter" jurisdiction that may be raised at any time and never may be waived, or whether it merely raises a matter of "notice" jurisdiction, unlike "subject matter" jurisdiction, [which] is an issue that must be raised at trial and preserved for direct appeal.

The Court declined the Commonwealth's invitation because the Court was of the view that a circuit court cannot acquire subject matter jurisdiction over a juvenile's case if the juvenile court failed to give the statutorily required parental notification of the initiation of proceedings in the juvenile court.

I also observe that the majority fails to mention or discuss this Court's decision in Jackson v. Warden, 259 Va. 566, 529 S.E.2d 587 (2000), which should be controlling in this case. Chauncey Jacob Jackson, who had been convicted and sentenced to death, Jackson v. Commonwealth, 255 Va. 675, 499 S.E.2d 538 (1998), cert. denied, 525 U.S. 1067 (1999), filed a petition for writ of habeas corpus styled Chauncey Jacob Jackson, Petitioner v. John B. Taylor,

25

_Warden Sussex I State Prison_, Record No. 991477.  Jackson

asserted, among other things, in his petition that his

convictions were void because the juvenile court failed to

notify his father of the juvenile court proceedings, citing

our decision in _Baker II_ and the Court of Appeals' decision

in _Baker I_.

In response, the Commonwealth stated in its motion to

dismiss:

> In an attempt to circumvent his default/waiver of his
> [_Baker_ claim], Jackson asserts that a "_Baker_" error is a
> subject matter jurisdiction that absolutely voids his
> conviction and that can be raised at any time.  The error
> identified in _Baker v. Commonwealth_, 28 Va. App. 306, 504
> S.E.2d 394 (1998), _affirmed_, 258 Va. 1, 516 S.E.2d 219
> (1999) and alleged by Jackson, however, is not the type of
> "subject matter" jurisdiction defect that may be raised at
> any time.  It is, rather, a mere defect in "notice"
> jurisdiction which, as with any jurisdictional defect other
> than one of subject matter jurisdiction, "will be
> considered waived unless raised in pleadings filed with the
> trial court and properly preserved on appeal."

The Commonwealth essentially relied upon the same

argument and cases in its motion to dismiss in _Jackson v._

_Warden_ that it relied upon in _Baker II_ and in the present

proceeding.  A panel of this Court denied Jackson's

petition for habeas corpus.  Jackson filed a petition for

rehearing that was considered by the full Court.  Jackson

reasserted his jurisdictional arguments in his petition for

a rehearing.

26

The full Court, upon consideration of the petition for rehearing, <u>unanimously</u> held that the circuit court did not have jurisdiction to try Jackson for the capital murder and related offenses.  In its published order, this Court stated:

> On consideration of the petition of petitioner to set aside the judgment rendered herein on the 18th day of November, 1999 and grant a rehearing thereof, it is ordered that the said judgment dismissing the petition be reversed and set aside and a rehearing is granted.
>
> On consideration of the pleadings filed in this case, the Court is of opinion that the Circuit Court of the City of Norfolk <u>never acquired jurisdiction</u> to try the petitioner for capital murder and five companion felonies. <u>David Moore v. Commonwealth</u>, 259 Va. 431, 527 S.E.2d 406 (2000).  Accordingly, a writ of habeas corpus is awarded the petitioner and petitioner's convictions for capital murder, attempted robbery, conspiracy to commit robbery, two counts of use of a firearm in the commission of a felony and receipt of stolen property are vacated.  This matter is remanded to the Circuit Court of the City of Norfolk for a new trial if the Commonwealth be so advised.
>
> The Clerk of this Court shall certify copies of this order to the petitioner, to the respondent, to the Clerk of the Circuit Court of the City of Norfolk, and to the Attorney General of Virginia which certification shall have the same force and effect as if a writ of habeas corpus were formally issued and served.

<u>Jackson v. Warden</u>, 259 Va. at 566-67, 529 S.E.2d at 587 (emphasis added).

It is abundantly clear from the record in <u>Jackson v. Warden</u> that this Court unanimously and expressly rejected the arguments that the Commonwealth again advances today

27

and which the majority, after a change of mind, has decided to embrace. Procedurally, the Jackson v. Warden case is virtually identical to the present case. Jackson, just as Nelson, did not assert during the trial of the underlying convictions that the Commonwealth failed to notify a parent of proceedings in the juvenile court. Jackson, just as Nelson, alleged in his habeas petition that his father was not notified of the initiation of proceedings in the juvenile court or of the transfer hearing. Jackson, just as Nelson, alleged that the juvenile court's failure to notify his father of the proceedings rendered his convictions in the circuit court void.

Thus, I fail to understand how the majority, which participated and voted in Jackson v. Warden, can somehow conclude that David Moore is at odds with precedent previously established by this Court after full deliberation upon the issue. The majority simply ignores the record and our published decision in Jackson v. Warden as if that case does not exist. This Court did not err in Baker II, David Moore, and Jackson v. Warden. Rather, the majority has abandoned the consistent and longstanding juvenile court jurisprudence of this Court, dating back to the French decision, to reach a different outcome, abruptly discarding the principle of stare decisis.

28

Because I would hold that Nelson's convictions were void and not merely voidable, I would also hold that his petition for a writ of habeas corpus is not barred by the statute of limitations contained in Code § 8.01-654(A)(2). Accordingly, I would grant the relief sought by Nelson in his habeas corpus petition and remand this case to the trial court for a new trial if the Commonwealth be so advised.